IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RANDY GLAUS,

               Plaintiff,

   v.

SPEEDWAY SUPERAMERICA, LLC
and SPEEDWAY, LLC,

             Defendants.

OPINION AND ORDER

12-cv-777-slc

---

     Randy Glaus, a 54-year-old store manager of a Speedway gasoline and convenience store in North Menomonie, Wisconsin, was fired in January 2010 after he scheduled Matt Klemmer, an employee with on-file work restrictions, to work without receiving clearance from Speedway's Human Resources department.  Glaus contends that he would not have been fired but for his age, so he has filed this lawsuit against Speedway Superamerica, LLC and Speedway, LLC (collectively, "Speedway") under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634.  Speedway responds that Glaus's firing had nothing to do with his age but everything to do with his repeated failure to abide by company policy and his insubordinate conduct in connection with Klemmer's return to work.

     Before the court is Speedway's motion for summary judgment.  Glaus's evidence of age discrimination is not strong, but when it is viewed in the light most favorable to Glaus, as Rule 56 requires at this juncture, Glaus has put in enough to survive summary judgment.  More specifically, on the record currently before the court, I conclude that a reasonable jury could infer from Speedway's shifting explanation about its reasons for firing Glaus and its more favorable

treatment of an arguably similarly-situated, younger employee, that Speedway fired Glaus because of his age.  Accordingly, I am denying defendants' motion for summary judgment.

Construing the evidence in the light most favorable to Glaus and drawing reasonable inferences in his favor, I find the following facts to be undisputed for the purposes of deciding the instant motion (except where otherwise noted):

## FACTS

### I.  The Parties

Speedway is a retail operation with gasoline/convenience stores located across the Midwest.  Randy Glaus began working for Speedway in April 1986 as an assistant manager and was promoted to a Store Manager position in 1994.  In May 2001, he became a Store Manager III at the North Menomonie store, where he remained until his termination in January 2010.

As Store Manager III, Glaus's primary responsibilities included providing leadership and direction for the store and having ultimate responsibility for store performance and the execution of  company goals.  Glaus also oversaw employee training, scheduling and coaching so as to ensure that all store positions were staffed appropriately.

From 2007 until his termination, Glaus reported to District Manager Yasser Gharib.  At the time of his termination, Glaus was 54 years old; Gharib was 42.  Glaus's performance during this time period was never rated below "satisfactory" and his performance was more often rated as "very satisfactory" or "outstanding."

2

## II.  Speedway's Policies

Speedway maintains an Occupational Injury and Illness (OI&I) policy that forth a series of steps that a manager or an associate must follow in the event of a workplace injury.

Step 1 of the OI&I policy states that in the event of an employee injury, the injured associate must immediately report the injury to the Store Manager or Team Leader on duty.  A "Team Leader" includes a co-manager or shift lead.  If the associate is the only person on duty at the time of the incident, then s/he is to telephone the Store Manager or Team Leader to report the injury.

Step 2 of the OI&I policy states:

> If the injury is <u>not</u> severe or life threatening, the Store Manager or Team Leader is then to *immediately* contact the District Manager (DM). The DM is to speak with the injured/ill associate to determine the circumstances and severity of the injury/illness.

If medical attention *is* needed, then the associate is to be given a Return to Work form and must be sent or taken to a medical treatment provider.  When the Return to Work form is returned to the Store Manager, then the Store Manager must immediately mail it to Speedway's Workers' Compensation Department in Enon, Ohio.  In the event the associate returns to work with restrictions, then the Store Manager must review the restrictions with a Human Resources representative to determine if, and to what extent, those restrictions can be accommodated at the work site.

Step 3 of the OI&I policy provides that in the event the injury was caused by an unsafe condition, then the condition must be corrected immediately.

Step 4 of the OI&I policy states that the Store Manager or Team Leader is to provide the associate with an OI&I Report Form to be completed immediately.  Sections I and II of the

OI&I Report are to be filled out by the injured employee and signed by that employee and Section III is to be completed and signed by the supervisor.  The Store Manager or Team Leader then is to fax an accurate and fully completed OI&I Report to the Worker's Compensation Intake Processor within 24 hours of the injury.

Finally, the District Manager is to conduct an investigation within 72 hours of the incident.

At a District meeting that Glaus attended in 2009, Gharib told the assembled Store Managers that if any OI&I occurred, then they needed to "start to fill out" the report but should wait to fax it to Human Resources until Gharib had had a chance to review it, noting that there had been problems in the past with the forms having been incorrectly filled out.  Gharib had also instructed his Store Managers, both verbally and via email, to call him directly in the event of a workplace injury.

Speedway also maintains an Unsatisfactory Performance and Termination policy, which provides that insubordination is a form of gross misconduct that may lead to discharge from employment.

## III.  Incident Involving Matthew Klemmer

### A.  Klemmer is Injured and Placed on Leave; Gharib Counsels Glaus About the Policy

On December 28, 2009, Glaus was working at the North Menomonie store with Matthew Klemmer, a co-manager who was in training.  As co-manager, Klemmer reported to Glaus.  Klemmer was fixing a breakaway at a gas pump when he felt a crunching in his wrist.

Klemmer initially thought he was injured, but the pain went away quickly so he figured he was fine and completed his shift.

The parties dispute whether Klemmer told Glaus about the "crunching"on the day it happened; it is undisputed that Klemmer told Glaus about it the next day, December 29, 2009, when Klemmer and Glaus were both at the store.  On that day, Klemmer told Glaus that his wrist was hurting and that it had begun at work the previous day.  Glaus told Klemmer to call Gharib and let him know that Klemmber was going to the hospital to have the wrist examined. Klemmer telephoned Gharib, who was not available, so Klemmer left a message about his injury. Klemmer continued to work while he and Glaus waited for Gharib to call back.

After hearing Klemmer's message, Gharib called the store.  Klemmer asked if he could go to the doctor and Gharib told him that if he needed medical attention, he should go.  After speaking with Klemmer, Gharib spoke with Glaus, and asked why Klemmer and not he (Glaus) had called him (Gharib).  Glaus responded that he thought Klemmer was management and that it was okay for him to call to report his own injury.

Some time after talking with Glaus and Klemmer on December 29, 2009, Gharib entered a verbal warning against Glaus into Speedway's human resources computer program, referred to as SAP.  The program prompted Gharib to choose from a drop-down menu the reason for the disciplinary action.  Among the choices were "Discourtesy Cust./Emp.,", "Insubordination," "Safety Violation" and "Violation of Company Policy."  The program did not allow for multiple reasons.  Gharib selected "insubordination" as the reason for the warning, and offered the following explanation:

> Randy failed to call his DM to report the OI&I happen on 12/28/2009 at his store and failed to complete the OI&I reports.

5

> Attached to the documentation is the e-mail was sent to all the DM's and I sent it to all the store manager in the district and communicated at the district meeting with all store managers on October 14th 2009.  Future violations of company policies or procedures can and will result in further disciplinary action up to and including termination.[1]

After Klemmer spoke with Gharib, Glaus gave Klemmer an OI&I form for his doctor to complete.  Klemmer then left the store and went to an urgent care clinic.  Glaus did not complete his portion of the OI&I form at that time.

Gharib came to the North Menomonie store the next day, December 30, 2009.  He noticed that Glaus had not completed the OI&I form for Klemmer.  Glaus and Gharib went through the form together and completed it.  According to the report, Klemmer reported his injury to Glaus on December 29, 2009 at 12:30 p.m..

While Gharib was still at the store, Klemmer arrived.  He presented Glaus and Gharib with a set of restrictions that he had been provided the day before by the urgent care doctor.  Glaus forwarded the work restrictions to Human Resources and told Klemmer that he could not return to work unless approved by HR.  Soon thereafter, Christa Powers, a representative from HR, called the store and reported that Speedway could not accommodate Klemmer's restrictions and that he would need to be placed on leave.  Glaus told Gharib that he thought HR's refusal to accommodate Klemmer's restrictions was "bull" or "bullshit," noting that Klemmer wanted to work and his doctor had said he could.

---

[1] Although Speedway has not produced the email referenced in the warning, Glaus does not dispute that he was aware that Gharib wanted store managers to call him immediately in the event of a workplace injury and to start to complete the OI&I report.

6

During his store visit on December 30, 2009, Gharib counseled Glaus about his need to take the OI&I policy seriously and about Glaus's actions the day before (that had resulted Gharib's entering an insubordination warning against Glaus).[2]

### B.  Klemmer Presents Glaus with an Updated Return to Work Form

On January 5, 2010, Klemmer came into the store with a new "Return to Work" form that had been completed by his physician.  Klemmer's doctor had placed a checkmark by a line indicating that he was recommending that Klemmer return to work with no restrictions on January 8, 2010, with the following parenthetical notation:  "(trial no restrictions)."  Directly below that, however, the doctor also checked a line stating that he was recommending "return to work with the following restrictions on 1/9/10," after which he drew an arrow pointing to the lower portion of the form.  This portion of the form contained a list of pre-printed work-restrictions with check-the-box lines in front of them for the physician to complete.  Although none of the boxes had been checked, the following remarks had been written in the "comments" section:  "limit lifting with left hand to less than 5 lb,"; "no pushing with left hand greater than 10 lb"; and "seldom power grip with left hand."  Exh. 27 to Glaus Dep., attached to Aff. of Peter Reinhardt, dkt. 58, exh. 13.

Upon receiving this form from Klemmer, Glaus faxed it to Speedway's Human Resources department.  He did not receive a response that day.

---

[2] Although Gharib testified that during this counseling session, he told Glaus that he had entered a verbal warning for these lapses in Glaus's disciplinary record, I must accept as true Glaus's testimony that Gharib never told him this.  In any event, Glaus admits that Gharib spoke with him about his conduct with respect to his reporting and documentation of Klemmer's injury.

### C.  Glaus Talks to Gharib on January 6

The next day, January 6, 2010, Gharib and Glaus spoke by telephone.  Glaus asked if he could take the afternoon off because he had worked Saturday morning to cover Klemmer's shift; Gharib replied that he could.  The remainder of what Gharib and Glaus discussed during the conversation is in dispute:

Gharib says that during this January 6, 2010 conversation, he told Glaus that Klemmer had not been approved by HR to return to work based on his latest return to work form and that Glaus was not to schedule him to work until Klemmer got updated restrictions.  Gharib further recalls that Glaus became upset by this news and referred to HR's decision as a "crock of shit," indicating that he would now have to work the weekend.

Glaus, on the other hand, claims that Gharib never mentioned Klemmer's return to work during this January 6, 2010 conversation, which means that Gharib never directed Glaus not to put Klemmer on the work schedule, and  Glaus did not become upset.

### D.  Gharib Learns that Klemmer is Working

According to Glaus's version of events, which must be accepted as true for purposes of defendants' summary judgment motion, Glaus never heard from HR or Gharib one way or the other regarding Klemmer's January 5 return to work form.  Glaus concluded from this silence that Klemmer could return to work.  Accordingly, he scheduled Klemmer to work beginning January 9, 2010.

Gharib did not know that Glaus had decided to return Klemmer to work until January 15, 2010, when he received a call from Powers in the HR Department. Powers told Gharib that Speedway's Worker's Compensation department had notified her that Klemmer was working and had asked Powers if she had approved his return to work, which she had not. Shocked by this news, Gharib immediately called Glaus, who told him that Klemmer had been working at the store since January 9, 2010.[3] Again, the parties dispute what happened next: Gharib says that he instructed Glaus to send Klemmer home and find someone to cover his shift for him; Glaus denies that Gharib told him this.[4]

Shortly after hanging up with Glaus, Gharib went to the Menomonie store and found that Klemmer was working. Gharib told Klemmer that Speedway could not honor his restrictions and that he had not been cleared to work, but he did not send Klemmer home and allowed him to complete his shift.

---

[3] The parties dispute whether Glaus was in the store that day or whether Gharib talked to him at home, but this is immaterial.

[4] Speedway argues that the court should disregard Glaus's affidavit testimony on this point because it is inconsistent with his deposition testimony. Speedway is incorrect. At his deposition Glaus was asked various questions whether he agreed with certain of Gharib's statements regarding the January 15 phone call, but Glaus was *not* asked specifically whether Gharib told him to send Klemmer home. The fact that he answered "no" to the question whether he had any further recollection of his conversation with Gharib on that date actually is consistent with his affidavit testimony that Glaus did not tell him to send Klemmer home. Dep. of Randy Glaus, dkt. 21, at 101-102, 109-110. A person would have no recollection of a statement that was not made. Therefore, Speedway is incorrect in its assertion that Glaus has failed to establish a genuine dispute of fact concerning the substance of the January 15 conversation.

### E.  Gharib Decides to Fire Glaus

Gharib determined that same day, January 15, 2010, that Glaus's handling of the Klemmer situation warranted Glaus's termination.  When deposed about the basis for that decision, Gharib provided this testimony:

> Q: And did you then [on January 15] decide that you were going to give some type of discipline to Mr. Glaus?
>
> A:  Mr. Glaus already received the discipline towards that issue.  And I talked to him on the phone.  And I learned that Matt was working since the 9th, so he ignored all my instructions.  So I didn't think there was a reason to give him another discipline.
>
> Q: So did you decide that he should be terminated on the 15th?
>
> A: Yes.  Yes.
>
> Q: Because he had ignored your instructions?
>
> A: Because he violated the company policy and put an employee safety in harm.

Dep. of Yasser Gharib, dkt. 22, at 78.

Gharib reviewed his decision to fire Glaus with Powers and with his supervisor, Region Manager Kirk Ellis, who both agreed with the recommendation based on the information Gharib had provided them.

Gharib and Powers went to the North Menomonie store on January 18, 2010 and advised Glaus that he was being fired for his insubordination in connection with Klemmer's injury.  Although Glaus could not recall the details of that conversation, Gharib testified that he told Glaus

> about the whole Matt Klemmer thing, which is with the schedule,
> return an employee to work without approval from HR or myself
> to work, which is a danger to the employee safety, and also broke
> company policy.  And he was instructed not to let the employee
> come into work and put him on the schedule until he gets the
> approval.

Gharib Dep., dkt. 22 at 88.

On  January 19, Gharib went on the SAP system and documented the decision to

terminate Glaus.  As the reason for the decision, Gharib selected "insubordination" from the

drop-down menu.  In the text, he provided the following explanation:

> EE#330436 Randy Glause [sic] # on 1/5/10 Randy received and
> faxed work restrictions for an employee.  Restrictions were
> reviewed by HR and DM responded back to Randy on 1/6/10 that
> we were not able to accommodate the current restrictions.  Randy
> allowed employee to return to work on 1/6/10 even though he had
> been advised not to.  Per company policy e-mailed to all Store
> Managers 12/09 and as communicated by HR rep at district
> meeting Randy attended on 2-4-2009.  If an associate presents
> work restrictions, these should be reviewed with the HR rep to
> determine if, and to what extent, those restrictions can be
> honored.  Randy is being terminated for insubordination.

Gharib testified that the SAP entry accurately stated his reasons for Glaus's dismissal and

that the "insubordination" noted on the first page of the SAP entry related to Glaus's failure to

follow Gharib's instruction on January 6th that he was not to schedule Klemmer to work unless

Klemmer came in with new work restrictions.  *Id*. at 96.


**V.  Alleged Comparator, Chance Radle**

Chance Radle also was a Speedway Store Manager who reported to Gharib.  Radle had

become a Store Manager in late August 2008.  In early 2009, Radle allowed an employee to

return to work from a medical leave following a non-work-related injury without first obtaining

11

approval from HR. Radle's conduct in this regard did not implicate the OI&I policy, but it did violate Speedway's policy regarding returning injured employees to work.  Radle was given a written warning for his conduct, which was deemed to be insubordinate.  When coached by Gharib about his conduct, Radle was receptive and respectful.

Prior to receiving the warning for returning the injured employee to work, Radle had received previous warnings for violating company policy.  On July 11, 2008, he had been given verbal counseling regarding failing quality assurance.  On November 5, 2008, he received a written warning for failing to obtain signatures on time sheets.  On January 30, 2009 Radle had received a written warning relating to a customer service issue.

Radle later voluntarily left his position with Speedway.

## VI.  Speedway's Statements Regarding the Reasons for Glaus's Termination

On July 22, 2010, Gharib prepared a statement, at HR's request, about the reasons for Glaus's termination.  Aff. of Peter Reinhardt, dkt. 58, exh. 17.  The statement read:

> On January 5th Randy faxed the return to work form for Matt Klemmer and it had restrictions which we could not work with.
>
> On January 6th I got a phone call from Christa Powers "HR" to advise me with the restrictions Matt has from his doctor.  I called Randy and I told him that Matt cannot come to work with the restrictions he has.  Randy Glaus replied to me with a comment "that is Horse Shit" he can work he just don't use his left arm.  On January 15th I received a phone call from Christa Powers "HR" asking me if Matt has returned to work and I told her not that I know of.  I called the store and spoke with Randy and Randy said that he had him on the schedule and that he has been working since the 9th.  I told Randy that he needs to remove Matt immediately from the schedule and send him home unless he brings an updated return to work form. Randy got angry and said now I have to look for someone to cover his shift and if I don't

> have to change my weekend plans and work his schedule. Randy
> replies this is crock of shit. I told Randy that we have to follow the
> company policy and Randy take Matt off the schedule.
>
> I was not aware of Randy's age. Randy told me due to the
> economy and profit sharing value dropping that he has to work
> longer and he never gave me a specific day when he is planned to
> retire.
>
> Randy was released from his employment due to the
> insubordination.
>
> Regarding Chance Radle conduct. Chance was not aware of the
> company policy or the process for putting employee on leave.
> Chance was coached and documented for not following the proper
> procedure on putting the employee on leave.

On August 17, 2010, Speedway submitted a position statement in connection with the administrative proceedings before the state Equal Rights Division. *Id.*, at exh. 23. The statement largely recounts those set forth in Gharib's statement. In addition, Speedway pointed out that Glaus had been disciplined for insubordination on December 28, 2009 in connection with his failure to call Gharib to report Klemmer's injury and to timely complete the investigation and incident report as required by company policy, and that he was warned at that time that further violations would result in further disciplinary action up to and including termination. Speedway further argued that Radle was not a proper comparator because he had been a Store Manager for only one year and two months and that he was unaware that non-work-related injuries were to be treated in the same manner as work-related injuries, whereas Glaus had been a Store Manager since 1994 and "was most certainly familiar with the process for dealing with employees under work restrictions." In addition, Speedway pointed out, Radle did not disobey a direct order from Gharib, as Glaus had.

13

## OPINION

### I.  Summary Judgment Framework

The purpose of summary judgment is to determine whether the parties have gathered and can present enough evidence to support a jury verdict in their favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001).  Summary judgment is appropriate if there are no genuinely disputed material facts, and if on the undisputed facts, the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The applicable substantive law will dictate which facts are material.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  A factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248; *Roger Whitmore's Auto. Serv., Inc. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005).

In this civil lawsuit, Glaus, as the plaintiff, has the burden to prove his claim.  He must show what evidence he has that would convince a trier of fact to accept his version of the events.  *Schacht v. Wisconsin Dept. of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).  Even so, in deciding the motion for summary judgment, this court must view all facts and draw all inferences in the light most favorable to Glaus because he is the non-moving party.  *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).  Glaus may not simply rest on the allegations in his complaint; rather, he must respond by presenting specific facts that would support a jury's verdict in his favor on his claims.  *Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009); *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005).  If Glaus fails to make a sufficient showing on an essential element of his case where he has the burden of proof, then this court must grant summary judgment to Speedway.  *Celotex*, 477 U.S. at 323.

14

## II.  Age Discrimination

The Age Discrimination in Employment Act of 1967 ("ADEA") makes it unlawful for an employer to fail or refuse to hire, to discharge or to discriminate against an employee "because of" the employee's age. 29 U.S.C. § 623(a)(1).  To succeed on a claim under the ADEA, an employee must show that his age was not simply one reason for the employer's adverse action, but that age was the "but-for cause." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act.").

Glaus invokes what has been deemed the "indirect" method of proving age discrimination, framing his evidence in terms of the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under this framework, first the plaintiff must set forth a prima facie case of discrimination, which requires a showing that: "(1) he was over forty years of age; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably." *Franzoni v. Hartmax Corp.*, 300 F.3d 767, 771–72 (7th Cir. 2002).  *But see Prochaska v. Menard, Inc.*, 829 F. Supp. 2d 710, 718-31 (W.D. Wis. 2011) (Crabb., J.) (finding that fourth prong of prima facie case requires only that plaintiff show that he was replaced by a substantially younger worker).  If the plaintiff makes this showing, then the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse action. *Id*.  If the defendant meets this requirement, then the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual.  *Id*.

15

Speedway concedes that Glaus has met the first and third components of his prima facie case, but maintains that he cannot show that he was meeting his employer's legitimate job expectations at the time he was fired or that a similarly-situated employee was treated more favorably.  As is often the case, evidence that is relevant to establishing these two elements of Glaus's prima facie burden is also relevant to showing pretext.  More specifically, Speedway maintains that Glaus was not meeting its legitimate job expectations because he engaged in a "pattern of misconduct," including insubordination, in regards to his handling of Klemmer's injury.  Glaus, on the other hand, says that he was not fired for any "pattern of misconduct," but instead for a sole incident of insubordination—his alleged failure to follow Gharib's January 6 directive not to return Klemmer to work.  Glaus insists this incident never occurred and that therefore he was meeting his employer's legitimate expectations.  Further, Glaus contends, to the extent that Speedway says it fired him for violating company policy, it disciplined him more harshly than it disciplined Chance Radle, a younger store manager who also reported to Gharib and who also violated company policy by returning an injured employee to work without HR clearance.

As the Court of Appeals noted in *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997), "[t]he defendant's expectations are not legitimate if they are phony; so if they are argued to be phony, the issue of legitimate expectations and the issue of pretext seem to merge." Similarly, "[w]here the plaintiff argues that an employer's discipline is meted out in an uneven manner, the similarly-situated inquiry dovetails with the pretext question." *Coleman v. Donahoe*, 667 F.3d 835, 853 (7th Cir. 2012).  Where all evidentiary roads lead to the pretext analysis, the Court of Appeals has made clear that it is proper to opt for the simpler approach and analyze

the evidence only once.  *See, e.g., Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir.

2001) (deferring comprehensive analysis of legitimate job expectations to pretext phase); *Hague*

*v. Thompson Distribution Co.*, 436 F.3d 816, 822-23 (7th Cir. 2006) (same).  I follow that

approach here, keeping in mind that if Glaus has insufficient evidence of pretext, he also cannot

show that he was meeting Speedway's expectations or that Radle was treated more favorably.[5]

Speedway asserts that Gharib terminated Glaus based on his "pattern of misconduct" and

insubordination in connection with Klemmer's injury.  More specifically, Speedway asserts that

Glaus was terminated because he committed multiple violations of Speedway's OI&I policy over

a two-week period, namely:

> 1)  failing to report Klemmer's injury to Gharib and instead directing
>     Klemmer to self-report his injury;
>
> 2)  failing to promptly fill out the OI&I form;

---

[5] In fact, it is doubtful whether this court must analyze Glaus's evidence in *McDonnell Douglas*'s terms at all.  In *Coleman*, 667 F.3d at 862, Justice Wood wrote a special concurring opinion, in which the other justices on the panel joined, in which she questioned the continuing usefulness of both the direct-versus-indirect paradigm and the *McDonnell Douglas* burden-shifting test at the pre-trial stage, comparing the test to "an allemande worthy of the 16th century."  Justice Wood advocates a more straightforward approach that asks simply whether the plaintiff has adduced evidence from which a rational jury could conclude that the employer took an adverse action on account of his protected class and not for any non-invidious reason.  *Id.*  Since then, the majority of active judges in the circuit have expressed their agreement with that approach.  *See, e.g., Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013) ("[W]e recognize and join the majority of active judges in this circuit who have opined that the time has come to jettison the 'ossified direct/indirect paradigm' in favor of a simple analysis of whether a reasonable jury could infer prohibited discrimination.") (quoting *Hitchcock v. Angel Corps., Inc.*, 718 F.3d 733, 737 (7th Cir. 2013)); *Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 514 (7th Cir. 2012) (citing *Coleman* concurrence with approval); *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 680 (7th Cir. 2012) ("the direct and indirect methods for proving and analyzing employment discrimination cases . . . have become too complex, too rigid, and too far removed from the statutory question of discriminatory causation"); *Harper v. C.R. England, Inc.*, 687 F.3d 297, 313–14 (7th Cir. 2012) (discussing *Coleman* concurrence and applying a more streamlined, collapsed version of the direct/indirect tests).  *See also King v. Acosta Sales and Marketing, Inc.*, 678 F.3d 470, 474 (7th Cir. 2012) ("the burden-shifting approach may cause more confusion than can be justified by its benefits").  In this case, how one approaches the analysis makes no difference:  under either method, I am satisfied that Glaus has adduced sufficient evidence from which a jury *might* find in his favor.

3)  returning Klemmer to work on January 9 without receiving clearance to do so and after having been counseled by Gharib that Glaus needed to take the OI&I policy seriously; and

4)  failing to send Klemmer home on January 15 after Gharib ordered him to do so.

Because this is a legitimate, non-discriminatory reason for Speedway's decision, the burden is upon Glaus to demonstrate that it is pretextual.

Pretext is more than just a mistake or a foolish decision; it is a "deliberate falsehood," a lie covering up a true discriminatory or retaliatory motive. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006). "[T]he question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason was his reason: not a good reason, but the true reason." *Id*. at 417-18. "The only concern in reviewing an employer's reasons for termination is the honesty of the employer's beliefs." *Id.* at 419.

A plaintiff may show that a decision is pretextual with evidence that an employer's stated motive did not actually motivate the decision, *Freeman v. Madison Metropolitan School District*, 231 F.3d 374, 379 (7th Cir. 2000), that defendant "grossly exaggerated" the seriousness of an incident, *Peirick v. Indiana University-Purdue University Indianapolis Athletics Dept.*, 510 F.3d 681, 693 (7th Cir. 2007), that defendant violated its own policies and procedures, *Davis v. Wisconsin Dept. of Corrections*, 445 F.3d 971, 976-77 (7th Cir. 2006), that the employer's stated reason had no basis in fact, *Marion County Coroner's Office v. EEOC*, 612 F.3d 924, 929 (7th Cir. 2010), or with any other evidence tending to show that the employer's stated reason is false.

Glaus begins his attack by arguing that the reasons for firing him that Speedway now is advancing are not what actually motivated its decision. Glaus contends that he was not fired

18

for a "pattern of misconduct" or "repeated violations" of company policy but for a sole act of insubordination: his alleged failure to obey Gharib's directive on January 6 not to return Klemmer to work.  According to Glaus, Speedway has deliberately backed away from the alleged January 6 incident because it knows that a material dispute of fact exists on that issue that will defeat summary judgment.

An employer's "shifting and inconsistent" explanations may support a finding of pretext, provided they actually *are* inconsistent and shifting.  *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003); *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003).  In response to Glaus's accusation, Speedway insists that its explanation for why it fired him has been consistent all along, namely, that he engaged in a "pattern of misconduct" beginning with his failure to properly report Klemmer's injury on December 29, 2009 and ending with his refusal to obey Gharib's directive on January 15, 2010 to send Klemmer home, throughout which he demonstrated a cavalier attitude towards Speedway's policy.  Although Speedway acknowledges that it previously identified Glaus's disregard of Gharib's January 6 order as one part of this overall course of misconduct, it denies that it ever said that it was the *sole* reason for Glaus's termination.

Both parties are half right.  Speedway is correct that it has never relied solely on the alleged January 6 incident as its reason for terminating Glaus.  In fact, the evidence relied on most heavily by Glaus as proof of Speedway's initial reason for his termination—the SAP documentation completed by Gharib on January 19, 2010—plainly identifies *two* reasons why Glaus was fired: 1) his alleged failure to comply with Gharib's January 6 order and 2) his violation of company policy with respect to returning injured employees to work.  Gharib's

explanation that Glaus's January 6 disobedience was what prompted him to chose "insubordination" from the drop-down menu does not mean, as Glaus suggests, that *only* that conduct was the reason for Gharib's decision.  It is undisputed that the drop-down menu did not permit Gharib to choose multiple reasons. However, the more detailed textual description makes clear that Gharib was also terminating Glaus for his failure to follow Speedway's OI&I policy regarding returning injured employees to work.

At the same time, Glaus is correct that, apart from these two violations, the SAP documentation makes no mention of the other points in the so-called "pattern" that Speedway identifies here.  Gharib said nothing about Glaus's prior discipline with respect to the initial reporting of Klemmer's injury or his alleged failure to comply with Gharib's directive on January 15, nor did he accuse Glaus of engaging in "repeated" violations of Speedway's OI&I policy. Likewise, Gharib did not emphasize these points when asked to explain his termination decision at his deposition.  To the contrary, the alleged January 6 insubordination has always been a critical component of Gharib's narrative.

Speedway insists that this is more a matter of semantics than substance, and the jury may well agree. On summary judgment, however, the evidence is murky enough to permit competing inferences.  This is not a case where Speedway is merely offering backfill for a somewhat general explanation that it provided at the time of the decision.  *See, e.g., Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449, 456 (7th Cir.1991) (no evidence of pretext where decision-maker had noted after interviewing plaintiff that "other candidates had skill/experience/education packages that might be preferable" and then recounted at trial specifics of the interview that led her to reach that conclusion). *See also Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733-34 (7th Cir. 2001).

In fact, Speedway is doing the reverse: it is taking what on their face are specific reasons and attempting to recharacterize them as general, in order to capture conduct that it believes Glaus cannot reasonably dispute. This is the sort of "shifting explanation" that supports an inference of pretext. *Accord Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 739 (7th Cir. 2013) (reasonable jury could infer pretext where reason advanced by employer at summary judgment for its decision to fire the plaintiff—her "failure to immediately call 911"— was an explanation that could have been "easily expressed" but was not mentioned on Disciplinary Action Form issued at time of her termination and was "not even mentioned in the part of the supervisor's affidavit that attempts to explain why Hitchcock was fired.").

One may wonder why Speedway would not simply rely on the reason it cited for firing Glaus that is not factually in dispute: his violation of company policy by scheduling Klemmer to work without first receiving HR clearance. But the answer to this question becomes plain when one examines Glaus's comparator evidence. Glaus has adduced evidence that Chance Radle, an employee under the age of 40 who was also supervised by Gharib, did the same thing but was given only a written warning. As noted previously, evidence that an employee who is outside the protected class but otherwise "similarly situated" to the plaintiff in material respects can support an inference that the reason for defendant's unequal treatment was the plaintiff's age. *Coleman*, 667 F.3d at 853 (discrimination plaintiff may employ comparator evidence to discharge her burden at the pretext stage as well as to satisfy the fourth element of her prima facie case).

To permit an inference of discrimination based on more favorable treatment of an employee who is not in the protected class, the plaintiff must show that the similarly situated

employee is "directly comparable to [the plaintiff] in all material respects." *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002).  Although "precise equivalence" is not required, a plaintiff still needs to show that a comparator employee was "treated more favorably by the same decisionmaker," even though they were both "subject to the same standards of conduct" and engaged in similar, but not necessarily identical, conduct. *Coleman*, 667 F.3d at 846–48.  "[T]he similarly situated inquiry is a flexible one that considers 'all relevant factors, the number of which depends on the context of the case.'" *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) *aff'd*, 553 U.S. 442 (2008) (quoting *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)).  "As to the relevant factors, an employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Radue*, 219 F.3d at 618.  In general, whether individuals are similarly situated is a factual question for the jury. *Eaton v. Indiana Dep't of Corr.*, 657 F.3d 551, 558 (7th Cir. 2011).

When a plaintiff complains of disparate discipline, the similarly-situated inquiry hinges on whether co-workers "engaged in comparable rule or policy violations" and received more lenient discipline. *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010), (quoting *Patterson v. Indiana Newpapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009)).  The co-workers' conduct need not have been identical to the plaintiff's, just similar.  *Ezell v. Potter*, 400 F.3d 1041, 1050 (7th Cir. 2005) (reversing summary judgment in relevant part; mail carrier accused of taking too long a lunch was similarly situated to another carrier who had lost a piece of certified mail).

22

Speedway returns to its "pattern of misconduct"/repeated violations story—again, *sans* the January 6 incident—to show why Radle is not a valid comparator.   Whereas Radle committed a "lone violation" of the OI&I  policy and was receptive to coaching, says Speedway, Glaus violated the OI&I policy "multiple times" during a two-week period and demonstrated a cavalier attitude.   As just discussed, however, a genuine dispute of fact exists concerning the reasons that actually motivated Gharib's decision.   As the Seventh Circuit has made clear,

> A characteristic that distinguishes two employees, regardless of its significance when objectively considered, does not render the employees non-comparable if the employer never considered that characteristic. The purpose of the similarly situated requirement is to provide a basis for a judgment about the fairness of the employer's decision. Factors never considered by the employer cannot provide any insight as to whether the employer's decision was motivated by discriminatory intent.

*Eaton*, 657 F.3d at 559.  Absent undisputed evidence that Gharib fired Glaus for engaging in a "pattern of misconduct" as opposed to simply violating the alleged January 6 directive and company policy by returning Klemmer to work, Speedway's attempt to distinguish Radle on this ground fails.

Speedway also attempts to distinguish Radle on the ground that his conduct did not implicate the OI&I policy because it involved an employee who had been injured off the job, not on the job as Klemmer had.  Speedway argues that the OI&I policy is in place to ensure proper reporting and management of work-related injuries "in light of the unique liability issues that such injuries present," dkt. 62 at 6, and suggests that the policy Radle violated did not present similar issues. However, Speedway does not explain what these "unique liability issues" are or why returning an employee with work restrictions arising from a non-workplace related injury without HR approval is not comparable in seriousness to Glaus's violation.  Notably, Gharib

23

indicated that by returning Klemmer to work without authorization, Glaus had placed an employee's health in jeopardy.  Presumably, that concern would have been present whether Klemmer had injured himself on or off the job.  I am satisfied that, absent a more detailed and persuasive showing by Speedway regarding the seriousness of Glaus's violation compared to Klemmer's, the fact Speedway admits that Radle violated a "policy" against returning an employee to work following an injury without HR clearance is enough to show similar conduct. *Accord Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 406-07 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008) ("Although arguments can be made as to relative greater potential harm of leaving the safe unlocked at night [instead of during day], the issue remains that it was contrary to Cracker Barrel policy to leave the safe unlocked and unattended at any point during the 24–hour day.").

Finally, Speedway says Glaus and Radle can be distinguished on the basis of their experience:  whereas Radle was relatively new to the Store Manager position, Glaus had been a Store Manager for 16 years.  In other words, Glaus should have known better.  Work experience may be a relevant consideration in the similarly-situated analysis, *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005).  Again, however, it is not entirely clear whether that characteristic factored into Gharib's decision.  And even if it had, Speedway's purported reliance on experience could cut the other way:  the jury could reasonably infer that Glaus's many years of above-satisfactory performance with the company was a factor that ought to have counted *in favor* of him, not against him.

Notwithstanding that Glaus and Radle may not be identical in all material respects, I am satisfied that they are similar enough to permit a jury to decide whether their difference in treatment was based on age discrimination.  Combined with the evidence of defendant's shifting

explanations, Glaus has mounted sufficient evidence to establish a prima facie case of age discrimination and to rebut Speedway's asserted non-discriminatory reason for his termination.

For completeness's sake, I note that Glaus has presented additional evidence, but none of it supports an inference of discrimination. First, Gharib's failure to expressly inform him that he was writing him up in SAP in connection with the verbal counseling on December 30 or to hand Glaus a written statement at the time of termination is not evidence of any cover-up, particularly where Gharib conveyed the substance of both disciplinary actions to Glaus in person. Second, a former employee's subjective belief that Gharib was trying to "force" him into retirement is too vague and conclusory to prove that Speedway is hostile to older workers, particular in light of the evidence that Speedway permitted the employee to retire and collect his full benefits notwithstanding his admissions of theft. Finally, even if the language of the OI&I policy and Gharib's instructions about completing the OI&I form might permit disagreement whether Glaus actually deserved to receive the December 29, 2009 verbal warning for his failure to strictly follow the reporting procedure, Glaus has no evidence to suggest that Gharib's reasons for issuing the warning were phony. That a reason might have been mistaken or irrational does not prove pretext so long as it was the true reason the employer acted, and here Glaus has no evidence that it wasn't.

In sum, the evidence of defendant's shifting explanations for its termination decision and more favorable treatment of Radle, although far from overwhelming, is sufficient to stave off the summary judgment motion. It will be up to the jury to evaluate the weight and credibility of this evidence and to decide whether Glaus was the victim of age discrimination.

ORDER

IT IS ORDERED that the motion of summary judgment for defendant Speedway Superamerica, LLC and Speedway, LLC is DENIED.

Entered this 19th day of March, 2014.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

26